LEOCADIE A. V. CASSAGNE, Appellant and Respondent, v. JAMES M. MARVIN et al., Trustees, etc., Appellants and Respondents.

Where a stockholder brings an action against his corporation and fails, the payment by him of the judgment for costs puts him in the same relations to the corporation that he had occupied before, and the directors may not resist an application for the transfer of his stock by setting up a claim that by reason of the suit the corporation was obliged to pay counsel fees and expenses in the litigation which were not covered by the taxable costs.

Certain holders of bonds secured by mortgage upon a hotel, which was being foreclosed, entered into an agreement with each other by which

defendants, who were parties to the agreement, were appointed trustees, and were authorized to purchase the property on the foreclosure sale and hold it for the benefit of those joining in the agreement. Defendants purchased the property, took a conveyance and entered into possession thereof ; thereafter the parties to the agreement executed another instrument ratifying and confirming the trust and waiving all matters and things that could impeach or invalidate it. Defendants, as such trustees, under an arrangement with the contracting parties, issued to each a certificate for his share, transferable in form. On the back of each certificate was a printed form of transfer the same as that in common use with respect to certificates of corporate stock, to which a note was appended to the effect that a purchaser might receive a new certificate on return of the original to the trustees properly assigned. R., the holder of one of these certificates, duly assigned the same to plaintiff for a valuable and full consideration. Prior to the assignment, plaintiff agreed to purchase on condition that a new certificate in her name could be procured. She corresponded with defendants and was induced thereby to believe that there would be no difficulty in this respect, and thereupon she completed the purchase. On presentation of the assigned certificate defendants refused to issue a new one to plaintiff. At the time of the assignment a suit was pending brought by R. against defendants to recover a dividend alleged to be due for her share of the rents and profits. After the assignment said action was brought to trial, R. was defeated and a judgment rendered against her for costs, which she paid. Defendants incurred expenses in the action over and above the costs taxed, and in this action, brought to compel them to issue to plaintiff a new certificate, defendants claimed that plaintiff's certificate or interest was chargeable with such expense. *Held,* untenable.

Also, *held,* that without regard to the question as to whether the trust attempted to be created was a technical statutory one, defendants occupied a fiduciary relation toward the holders of the certificates, and having voluntarily assumed the obligation to issue new certificates to assignees of those originally issued, they were equitably bound so to do; that the relations, duties and obligations between the trustees and beneficiaries were analogous to those between stockholders of a corporation and its directors and officers.

(Argued June 22, 1894; decided October 9, 1894.)

CROSS-APPEALS from a judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 15, 1893, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This action was brought to compel defendants to issue to plaintiff a certificate of interest in the United States Hotel property at Saratoga Springs.

The facts, so far as material, are stated in the opinion.

*Matthew Hale* for plaintiff. The plaintiff was entitled to the relief prayed for in the complaint, irrespective of the question as to the validity or invalidity of the attempted trust under which the defendants claim to hold title to the premises. (*Thompson* v. *Simpson,* 128 N. Y. 270.) The whole scheme by which a trust was attempted to be formed by the subscribers to the so-called subscription agreement is void, and the several certificate holders take title to the property as tenants in common. (*Cook* v. *Platt,* 98 N. Y. 35, 39, 48; *Heermans* v. *Robertson,* 3 Hun, 464; 64 N. Y. 332, 340; *Heermans* v. *Burt,* 78 id. 259, 267; *In re Hall,* 24 Hun, 153; 1 R. S. at Large, 678, §§ 58, 59; *Fellows* v. *Heermans,* 4 Lans. 230, 238; *Holly* v. *Hirsch,* 135 N. Y. 590, 594, 596; *McArthur* v. *Gordon,* 126 id. 597; *Hutchins* v. *Van Vechten,* 140 id. 113.) The claim of a lien by the defendants in their answer herein, upon the share of said trust property formerly belonging to Mrs. Roche, or on said certificate representing said share, by Mrs. Roche assigned to plaintiff, for certain costs and expenses beyond taxable costs, alleged to have been incurred and paid by them in defending an action previously brought by Mrs. Roche against them for a dividend under said certificate, is untenable, and even if valid as against Mrs. Roche is wholly inadmissible in this action as a claim in favor of the defendants against the plaintiff here. (*Roche* v. *Marvin,* 92 N. Y. 398; *De Figaniere* v. *Young,* 2 Robt. 670, 672; Code Civ. Pro. § 502, subd. 1; *Canada* v. *Stiger,* 55 N. Y. 452; *Meyers* v. *Davis,* 22 id. 489; *Cummings* v. *Morris,* 25 id. 625.)

*C. C. Lester* for defendants. No express trust such as can be enforced specifically in equity was created, because no person having authority to dispose of the estate attempted to cre-

ate such a trust. (*Selden* v. *Vermilyea,* 3 N. Y. 526.) The plaintiff having made the existence of a valid express trust the foundation of her claim for relief, and having demanded judgment for a specific performance of the alleged trust, cannot have judgment for a different cause of action, and the plaintiff cannot be permitted to deny the title of the trustees. (*Hudson* v. *Swan,* 83 N. Y. 552; *Paige* v. *Willet,* 38 id. 28; *Tell* v. *Beyer,* Id. 161; *Hall* v. *U. S. R. Co.,* 30 Hun, 375; *Getty* v. *Town of Hamilton,* 46 id. 1, 4; *Crosbie* v. *Leary,* 6 Bosw. 312; *Platt* v. *Stout,* 14 Abb. Pr. 178; *Arnold* v. *Angell,* 62 N. Y. 508; *Williams* v. *M. & T. Ins. Co.,* 54 id. 577; *Joslyn* v. *Joslyn,* 9 Hun, 388; *Hurst* v. *Harper,* 14 id. 280; *Van Cott* v. *Prentice,* 5 N. Y. S. R. 654; 104 N. Y. 45.) The defendants by the purchase at the foreclosure sale and the conveyance by the referee acquired an absolute title to the premises. (*Nicol* v. *Sands,* 131 N. Y. 24; *Stokes* v. *Recknagel,* 6 J. & S. 368; *Woolsey* v. *Funke,* 121 N. Y. 92; *Towar* v. *Hale,* 46 Barb. 361; *King* v. *Townshend,* 141 N. Y. 364; *Peck* v. *Mallams,* 6 Seld. 509; *Moses* v. *Livingston,* 4 N. Y. 208; *B. C. Inst.* v. *Bitter,* 87 id. 250; *Garfield* v. *Hatmaker,* 15 id. 475; *Sturtevant* v. *Sturtevant,* 20 id. 39; *McCartney* v. *Bostwick,* 32 id. 53, 59; *Everett* v. *Everett,* 48 id. 218; *Hurst* v. *Harper,* 14 Hun, 280; *Robertson* v. *Sayre,* 25 N. Y. S. R. 449.) Assuming that Marvin and Hall held the absolute title to the premises, as demonstrated in the preceding point, it was competent for them to recognize any equitable rights of plaintiff and secure them by a lawful declaration of trust. (*Foote* v. *Bryant,* 47 N. Y. 544; *Underwood* v. *Curtis,* 127 id. 538.) The defendant Marvin is not estopped by his letter of November 26, 1883, from refusing to issue a new certificate to the plaintiff. (*Bush* v. *Lathrop,* 22 N. Y. 535; *Ingalls* v. *Morgan,* 10 id. 178.) The court erred in refusing to allow the counterclaim set up by defendants. (*Paige* v. *Willet,* 38 N. Y. 28; *Tell* v. *Beyer,* Id. 161; *Getty* v. *Town of Hamlin,* 46 Hun, 1–4; *Van Cott* v. *Prentice,* 104 N. Y. 45; *Arnold* v. *Angell,* 62 id. 508; *Greenwood* v. *Marvin,* 111 id. 436; *Day* v. *Roth,*

18 id. 448.; *Siemon* v. *Schurck*, 29 id. 598; *Gilbert* v. *Gilbert*, 2 Abb. Ct. App. Dec. 256; *B. N. Bank* v. *Duncan*, 12 Hun, 405; *Ryan* v. *Dox*, 34 N. Y. 309; *Carr* v. *Carr*, 52 id. 251; Perry on Trusts, §§ 125, 127, 407; *Lounsbury* v. *Purdy*, 18 N. Y. 518; *McArthur* v. *Gordon*, 126 id. 597; *Woodruff* v. *N. Y., L. E. & W. R. R. Co.*, 129 id. 27.)

O'Brien, J. In the year 1875 a mortgage of half a million dollars upon the United States Hotel at Saratoga, given to secure negotiable bonds to that amount then held by various parties, was in process of foreclosure. Judgment was entered in the action and the property was advertised for sale by a referee for the 1st day of May, 1875. On the fifteenth day of April preceding the day appointed for the sale, certain holders of the bonds, in order to prevent a sacrifice of the property, and for the purpose of protecting each other, entered into an agreement in writing with the defendants, who also held bonds, whereby the bondholders signing the instrument constituted the defendants trustees for the protection of their interest in the property. The defendants were thereby authorized as such trustees to purchase the property under the decree and to hold the legal title thereto as absolute owners, and to sell and convey and incumber the same by mortgage, lease or otherwise. In case the property was purchased by the trustees the bondholders subscribing the instrument promised and agreed with the trustees and each other that they would accept and receive the property so purchased, subject to certain chattel mortgages on the personalty in payment and satisfaction of their shares of the purchase price, and they released the trustees and the referee from all other and further payment. The subscribers also agreed to advance to the trustees sufficient funds to pay off and discharge certain liens upon the property, not extinguished by the judgment, and the interest in the proceeds of the sale of such bondholders as refused to become parties to the agreement. The trustees themselves were holders of bonds, and they were permitted by the agreement, which was not to take effect till holders of

bonds to the amount of $400,000 had executed it, to have all the rights in the property, in proportion to their interests, as the others. In pursuance of the agreement, the defendants purchased the property at the referee's sale and took a conveyance of the same. Afterwards, and on the 10th of May, 1875, the persons who had executed the above-described instrument, including the trustees, signed another paper ratifying and confirming the trust expressed in the former writing, expressly admitting the validity of the trust and waiving all matters and things that could impeach or invalidate the same. By virtue of these instruments the defendants entered upon the care and management of said property and have ever since continued to act in that capacity. The trustees, under an arrangement with the persons interested in the property held by them, adopted the practice of issuing to each of them a certificate, transferable in form which, upon its face, expressed the interest which the person to whom it was delivered had in the property. In November, 1875, the defendants issued to one Eugenia Roche a certificate, No. 55 of the series, in which it was stated that she was entitled to a beneficial interest in the United States Hotel property at Saratoga, the legal title of which was held by them, amounting to $997, upon the basis that the interest of all the beneficiaries amounted to $454,505, subject to a mortgage lien of $260,000, and that she was entitled to share *pro rata* with the other beneficiaries in the net rents and profits and entitled to her proportionate share of the proceeds in case of a sale. There was a printed form on the back of this certificate for the purpose of enabling the holder to transfer the same in the manner in common use with respect to certificates of stock, and a note appended to the effect that a purchaser might receive a new certificate upon the return of this to the trustees properly assigned. Mrs. Roche was one of the subscribers to the agreement under which the defendants entered into the control and management of the property, and similar certificates were issued by the defendants to the

other parties to these agreements for the purpose of showing their respective interests in the property. On November 24, 1883, Eugenia Roche assigned in due form this certificate to the plaintiff, using for that purpose the printed blank above described, and the plaintiff thereupon requested the defendants to transfer the same upon their books and to issue to the plaintiff a new certificate upon its surrender, and the defendants, after some correspondence, refused to comply with this request. The plaintiff agreed to pay a valuable and full consideration for the certificate and more than the face value stated thereon, believing that the defendants would transfer the same on the books and issue a new certificate therefor. Some time in the year 1883 Eugenia Roche commenced an action against the trustees defendants to recover a dividend of $79.76, payable on the certificate held by her, as her share of the rents and profits of the property for the previous year. On a trial it was found that defendants had paid the dividend to her agent, and judgment was entered in the action for the defendants, with costs, which were taxed and adjusted at $69.72, January 17, 1884. These costs were paid by the unsuccessful plaintiff in the action. An appeal was taken from this judgment to the General Term, and it was there affirmed, with $81.62 costs, May 27, 1885. It has been found by the trial court that the defendants incurred expenses in defending this action, over and above the costs taxed in their favor, in the sum of $254.48, and for defending the appeal, over and above costs, in the sum of $209.60; and they insist that the certificate or interest held by the plaintiff and involved in the litigation is chargeable with such expense. The purpose of this action was to compel the defendants to transfer the interest represented by certificate No. 55, standing on defendants' books in the name of Eugenia Roche, to the plaintiff, who succeeded to her title by the transfer of the certificate on November 24, 1883, and to issue a new certificate in the name of the plaintiff. The defense, as I understand it, rests upon two propositions: (1) That the trust attempted to be created by the instruments referred to is inoperative and invalid. (2)

That the expenses of the litigation between the original owner of the certificate and the defendants, over and above the costs paid, together with the costs of the appeal which are unpaid, are in equity a lien or charge upon the interest represented by the certificate which the defendants are entitled to have paid before transferring the interest on the books or issuing a new certificate. There is no finding that the transfer to the plaintiff of November 24, 1883, was in fraud of any claim which the defendants then had against the original holders of the certificate, or which was in process of ripening into a judgment, and we must, therefore, assume that on that day the plaintiff, by the execution of the assignment of the certificate, and by the acknowledgment and delivery to her of the same, became vested with the title to that share of the property represented thereby. The certificate was the evidence of the interest which the holder had in the property, and its transfer and delivery by the holder to the plaintiff in the manner prescribed by the trustees transferred the interest in the property. For the purpose of collecting the dividends and to facilitate the sale of the several interests in the market a transfer upon the books and a new certificate might be necessary. In the absence of some sufficient reason or excuse, it was the duty of the defendants to sanction the transfer by recording the same on the books and issuing a new certificate to the party to whom the interest had been transferred. This was a duty and obligation which the defendants owed to the bondholders or persons who became severally the beneficial owners of the property which the defendants had in their charge. It was necessarily involved in the relations between the trustees and owners created by the written instruments and the course of business adopted and acted upon by all. The plaintiff agreed to purchase the certificate from the original owner on condition that she could procure a new one in her own name. The correspondence with the defendants was such as to induce her to believe that there would be no difficulty on that point, and then she paid for the certificate a sum considerably larger than its face value. Subsequently

the trustees concluded to refuse to make the transfer unless the expenses of the litigation were paid. We do not think that the demand of the plaintiff can be successfully defended upon this ground. When Mrs. Roche paid the judgment for costs awarded against her she discharged all legal obligations which the defendants had against her or which they could enforce in any way against her property. In the absence of fraud she had the right to transfer her interest to the plaintiff on the 24th of November. After that date the defendants' duty to make the transfer and issue the new certificate was to the plaintiff. Concededly, they had no claim of any kind against her, and whatever their claim against Mrs. Roche might be in law or equity it did not attach to or pass with the certificate. While it may not be necessary now to decide the question, it seems to me that the expenses of the litigation beyond the costs which the defeated party was adjudged to pay were chargeable to the fund or property in the defendants' hands, and not to the share of the person who instituted the unsuccessful suit. If a stockholder brings an action against the corporation and fails, the payment by him of the judgment for costs puts him in the same relations to it that he had occupied before. The directors could not resist his application to transfer his stock by setting up a claim that the corporation, by reason of the suit, was obliged to pay out large sums for counsel fees and expenses in the litigation which were not covered by the taxable costs.

Nor do we think that it is necessary in this case to determine the nature or character of the trust. It may or may not be a technical statutory trust, but that question does not concern the defendants in the discharge of the obligations and duties which they owe to the certificate holders. It is not material to inquire where the legal title to the property is, whether in the trustees or the bondholders. The defendants are in possession of the property and in receipt of the rents and profits concededly for the benefit of the parties holding the certificates. They occupy towards them fiduciary relations. One of the obligations which they have voluntarily

assumed is that they will do certain things to facilitate the transfer from one to another of the certificates which they issued in order to show what interest the holders had respectively in the property and in order to enable themselves to properly perform the duty of management and care which includes the distribution and payment to the parties in interest of the rents and profits in the form of dividends. This duty and obligation the defendants do not deny. They admit in the broadest terms that they hold the property and are administering it for the benefit of such bondholders as signed the agreement and to whom the original certificates were issued, or their assignees. This was the view taken of the case by the court below.

So that, whatever view may be taken in regard to the precise legal relations that the defendants bear to the purchased property now held by them, it cannot be denied that by their written agreement and the practical construction given to it by their own acts, and the course of business adopted by them in the performance of the duties which they assumed, they were under an equitable duty and obligation to furnish to the beneficiaries the certificate containing the evidence of their right. The trustees in the care and management of the property had for many years regularly paid to the original holders of the bonds, or their assignees, dividends from the net rents and profits, and thus their several interests had become the subject of purchase and sale in the market, and the duties of the defendants, from the course of business that had been established under the written instruments, could not well be performed, in the sense that they were understood by all the parties, without instituting methods for the transfer of these interests on the defendants' books and to such parties as became the owners of the shares from time to time. This manner of transacting the business, if not fairly to be implied from the agreement, was adopted immediately after the defendants entered into the possession and management of the property, and adhered to for many years, so that now it can fairly be said to be a duty imposed upon the

defendants under the written instruments. In short, the relations, duties and obligations existing between the trustees and beneficiaries at the time of the commencement of this action were analogous to those that exist between the stockholders of a corporation and its directors and officers. The learned trial judge in his disposition of the case felt constrained to follow the General Term on a former appeal (*Cassagne* v. *Marvin,* 16 N. Y. St. Repr. 327), but at the same time he recognized the fact that the plaintiff in November, 1883, became the owner in good faith, and for a valuable consideration, of the share of Mrs. Roche, and that she purchased it in reliance not only upon the established course of business adopted by the defendants themselves, but also upon what was understood as a promise on the part of one of the trustees to make the transfer in the manner required. Finally, the learned counsel for the defendants insists that the complaint in this action is so framed as to give the action the form of one against trustees of an express trust to enforce the specific performance of a duty enjoined upon them as such, and the trust being void under the statute the action must fail. This result, we think, does not follow from the premises assumed. Whether the legal title is now in the trustees or the holders of the certificates the defendants owe certain duties of a fiduciary nature to them which a court of equity may properly enforce. It may be true that the plaintiff brought this action upon the theory that the trust was valid, but all the facts are alleged and found, and if they entitle the plaintiff to any relief the fact that she proceeded upon some erroneous legal theory applied to the facts will not defeat her right to such relief as the facts may warrant, if it is consistent with the complaint and embraced within the issue. (Code, § 1207.) The defendants do not deny or repudiate any of their obligations as expressed in the writings or created by the course of business. They simply claim that this particular certificate holder, on account of what had occurred before she purchased it and subsequently, is not entitled to have the transfer made upon the books or to a new certificate.

As we think that this position is untenable for the reasons stated, the judgment must be reversed and a new trial granted, costs to abide the event.

All concur, except ANDREWS, Ch. J., not sitting, and FINCH, J., not voting.

Judgment reversed.